UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-CV-61229-AMC

THE SMILEY COMPANY SPRL,

     Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

     Defendants.

_____/

### PLAINTIFF'S *EX PARTE* MOTION FOR ORDER
### AUTHORIZING ALTERNATE SERVICE OF PROCESS ON DEFENDANTS

Plaintiff, The Smiley Company SPRL ("Smiley" or "Plaintiff"), by undersigned counsel and pursuant to Fed. R. Civ. P. 4(f)(3), respectfully moves on an *ex parte* basis for an order authorizing alternate service of process on Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" to the Complaint ("Defendants"), and in support thereof respectfully refers the Court to the following Memorandum of Law.

### MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff is moving for alternate service *ex parte* as Plaintiff has yet to provide Defendants with notice of this action. *See* accompanying Declaration of A. Robert Weaver ("Weaver Decl.") at ¶ 3. Plaintiff filed its *Ex Parte* Motion for Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Motion for TRO"), which is currently pending before the Court. Plaintiff is submitting this Motion so that, if the Court is inclined to grant the Motion for TRO, Plaintiff can effectuate service of process pursuant to Rule 4 of the Federal Rules of Civil

Procedure simultaneously with notice of the Court's Order on the Motion for TRO.  This Motion is directed to all Defendants identified on Schedule "A" to the Complaint, all of which, upon information and belief, are residing and/or operating outside of the United States.

Plaintiff is suing Defendants for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement, and copyright infringement. *See* Complaint (ECF No. 1).  Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiff's registered trademarks and copyrights within this district and throughout the United States by operating ecommerce stores via third-party marketplace platforms under their seller identification names identified on Schedule "A" to the Complaint (the "Seller IDs").

Pursuant to Fed. R. Civ. P. 4(f)(3), Plaintiff requests an order authorizing service of process on Defendants via electronic mail ("e-mail") and via website posting.  Service via e-mail and by posting on a designated website are appropriate and necessary in this case, because (1) Defendants operate via the Internet; and (2) Defendants rely on electronic communications to operate their businesses.  As such, Plaintiff can contact Defendants directly and provide notice of Plaintiff's claims against them electronically via email.  Additionally, Plaintiff has created a website and will be posting copies of the Complaint and all other documents filed in this action.

Plaintiff respectfully submits that an order allowing service of process and service of all filings via e-mail and by posting on a designated website in this case will benefit all parties and the Court by ensuring Defendants receive immediate notice of the pendency of this action and allowing this action to move forward expeditiously.  Absent the ability to serve Defendants by e-

mail and/or by website posting, Plaintiff will almost certainly be left without the ability to pursue a remedy.

## II.      FACTUAL BACKGROUND

### A.      Defendants Have Valid Means of Electronic Contact.

Defendants operate Internet-based businesses and identify e-mail, including onsite contact forms, as a means of communication such that Plaintiff will be able to provide Defendants with notice of this action via e-mail and website posting.  As a practical matter, it is necessary for merchants who operate entirely online, such as Defendants, to provide customers with a valid electronic means by which customers may contact the merchants to ask questions about the merchants' products, place orders from the merchants, and receive information from the merchants regarding the shipments of orders.  Moreover, e-commerce defendants generally must maintain accurate e-mail addresses where their marketplace platform administrator or domain registrar and payment processor may communicate with them regarding issues related to the maintenance of their e-commerce store and domain name accounts and transfer of funds for the payment for goods. Additionally, Plaintiff has created a serving notice website that will be appearing at the URL, https://www.dropbox.com/scl/fo/yh98pnn1rib9z6ssktbrv/h?rlkey=qayqsb19pjifwhmh5bv3n3avr&dl=0 ("Plaintiff's Serving Notice Website") such that anyone accessing the Plaintiff's Serving Notice Website will find copies of all documents filed in this action.  *See* Weaver Decl. at ¶ 4. Defendants are further able to receive notice of this action by e-mail via the e-commerce marketplace platform that Defendants use to conduct their commercial transactions via the Seller IDs.  Weaver Decl. at ¶ 5.

Plaintiff will also be able to provide each Defendant notice of this action via public announcement on Plaintiff's designated website.  Plaintiff has created a publication website,

Plaintiff's Serving Notice Website, that will be appearing at the URL https://www.dropbox.com/scl/fo/yh98pnn1rib9z6ssktbrv/h?rlkey=qayqsb19pjifwhmh5bv3n3avr&dl=0, where copies of the Complaint and all other pleadings, documents, and orders issued in this action will be posted such that anyone accessing Plaintiff's Serving Notice Website will find copies of all documents filed in this action.  *See* Weaver Decl. at ¶ 6.  The address to Plaintiff's Serving Notice Website will be provided to Defendants via e-mail to Defendants' known e-mail accounts and onsite contact forms and will be included upon service of process in this matter.  *Id.*

Accordingly, each Defendant will receive notice of this action electronically by providing the address to Plaintiff's Serving Notice Website to their corresponding e-mail addresses or via the e-commerce marketplace platform Defendants use to conduct their commercial transactions via the Seller IDs.  *See* Weaver Decl. at ¶ 7.  In this manner, Defendants will receive a web address at which they can access all electronic filings to view, print, or download any document filed in the case similar to the court's CM/ECF procedures.  *Id.*

### B.     Defendants Rely on Electronic Communications.

Defendants have structured their e-commerce store businesses so that the means for customers to purchase Defendants' counterfeit and infringing goods at issue is by placing an order electronically.  Defendants take and confirm orders online and rely on electronic means to receive payment.  *See* Weaver Decl. at ¶ 8.

Further, in most instances, Defendants must provide an email address and physical address to the third-party platforms through which Defendants operate (*e.g.*, eBay, AliExpress, Alibaba, Amazon, Wish.com, Dhgate, etc.).  *Id.* at ¶ 9.  Few, however, if any Defendants purport to provide any type of a physical address to these third-party platforms much less a valid, accurate, and verifiable physical address.  *Id.* at ¶ 10.  Unlike an email address, which is typically verified by the

third-party online platforms, no verification typically occurs for physical addresses.  *Id*. at ¶ 11.

Because an Internet store operator can often input any physical address, such addresses are usually

false and/or are not where the Internet store operator is located.  *Id*. at ¶ 12.  As such, even if a

physical address is discoverable, it is not a reliable means for identifying and locating Defendants.

*Id*. at ¶ 13.[1]

## III.    ARGUMENT

Pursuant to Federal Rule of Civil Procedure 4(h)(2), a foreign partnership or other

unincorporated association may be served with process in any manner prescribed by Rule 4(f) for

serving foreign individuals.  Federal Rule of Civil Procedure 4(f)(3) allows a district court to

authorize an alternate method for service to be effectuated upon a foreign defendant, provided that

it is not prohibited by international agreement and is reasonably calculated to give notice to the

defendant.  In the present matter, alternate service of process via e-mail and by posting on

Plaintiff's Serving Notice Website are appropriate given that Defendants have established Internet-

based businesses by which they rely on electronic communications for their operation.

Accordingly, this Court should permit service on Defendants by e-mail and website posting.

### A.    The Court May Authorize Service via E-mail and Website Posting Pursuant to Fed. R. Civ. P. 4(f)(3).

Federal Rules of Civil Procedure 4(h)(2) allows a foreign business entity to be served with

process "in any manner prescribed by Rule 4(f)," including any manner ordered under Rule

4(f)(3)."  *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 619 (S.D. Fla.

2011).  A foreign partnership or other unincorporated association can therefore be served in the

---

[1] Indeed, a January 2020 publication on counterfeiting by the Department of Homeland Security ("DHS") cites a "lack of relevant policies and procedures to verify sellers' true names and addresses" by third party platforms, which "contributes to a range of impediments to effective enforcement."  Weaver Decl. at ¶ 14.

same manner as serving a foreign individual pursuant to Fed. R. Civ. P. 4(f)(3).  *Id.*  Rule 4(f)(3) allows alternative methods for service of process, so long as those methods are not prohibited by international agreement and are directed by the Court.  *See Prewitt Enterprises, Inc. v. The Organization of Petroleum Exporting Countries*, 353 F.3d 916, 923 (11th Cir. 2003); *see also Brookshire Bros., Ltd. v. Chiquita Brands Intern., Inc.*, Case No. 05-cv-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007); *Rio Properties, Inc., v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).  In fact, "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country."  *Chanel, Inc. v. Zhixian*, No. 10-cv-60585-JIC, 2010 WL 1740695, at *2 (S.D. Fla. April 29, 2010) (quoting *Rio Props., Inc.*, 284 F.3d at 1014 and citing *Mayoral–Amy v. BHI Corp.*, 180 F.R.D. 456, 459 n. 4 (S.D. Fla. 1998)).

The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the district court.  *Prewitt Enters., Inc.*, 353 F.3d at 921; *Rio Props., Inc.*, 284 F.3d at 1116; *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *2 (noting that "district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service"); *In re Int'l Telemedia Assocs.*, 245 B.R. 713, 720 (N.D. Ga. 2000) (noting that Rule 4(f)(3) is designed to allow courts discretion and broad flexibility to tailor the methods of service for a particular case).  Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under subsection 4(f)(3).  *Rio Props., Inc.*, 284 F.3d at 1114-15; *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1.  For example, in *Brookshire*, this Court allowed substitute service on a party's attorney pursuant to Rule 4(f)(3) holding as follows:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f) and each subsection is separated from the one previous merely by the simple conjunction 'or.' Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, onequal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates the primacy, and certainly Rule 4(f)(3) indicates no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1 (quoting *Rio Props., Inc.*, 284 F.3d at 1015); *accord TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. Jan 11, 2012) (noting that, in regards to Rule 4(f)(3), "there is no indication from the plain language of the Rule that the three subsections, separated by the disjunctive 'or,' are meant to be read as a hierarchy.").  In *Brookshire*, this Court further held, "[t]he invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief." *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *2.  Additionally, the Constitution itself does not mandate that service be effectuated in any particular way.  Rather, Constitutional due process considerations require only that the method of service selected be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* at *1 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also TracFone Wireless, Inc.*, 278 F.R.D. at 692; *Rio Props., Inc.*, 284 F.3d at 1016.  Accordingly, federal courts have allowed a variety of alternative service methods, including service by e-mail and service by posting on a designated website, where a plaintiff demonstrates the likelihood that the proposed alternative method of service will notify a defendant of the pendency of the action.  *See, e.g., Rio Props., Inc.*, 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); *In re Int'l Telemedia Assocs.*, 245 B.R. at 721 ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself

must be included among them."); *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) ("acknowledging the realities of the twenty-first century and the information age, the Court determined that the most appropriate place for publication was [plaintiff's website].").

Here, service on Defendants by e-mail and by posting on Plaintiff's Serving Notice Website will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiff's claims. Based upon Plaintiff's investigation, each Defendant utilizes e-mail as its principal means of contact, demonstrating that this means of contact is not just effective, but the most reliable means of communicating with that Defendant, and consequently, the most reliable means of providing Defendants with notice of this action. See Weaver Decl. at ¶ 15. Moreover, service by posting on Plaintiff's Serving Notice Website will be an additional source of reliability as Defendants will be able to see copies of the Complaint and all other documents in this matter electronically via their Internet browser. *Id.* at ¶ 16.

E-mail service on an online business defendant is appropriate and constitutionally acceptable in a case such as this when a plaintiff has proven that e-mail is the most effective means of providing a defendant notice of the action. *See Rio Props., Inc.*, 284 F.3d at 1017 (concluding "not only that service of process by e-mail was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [the defendant]."); *see also Popular Enterprises, LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail. The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases. Such

flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts.") (citation omitted).  In both *Rio Properties* and *Popular Enterprises*, the district courts determined e-mail service to be appropriate, in part, because, as in this case, the defendants conducted their business online, used e-mail regularly in their business, and encouraged parties to contact them via e-mail.  *See id.*

A number of other district courts have similarly held that alternate forms of service pursuant to Rule 4(f)(3), such as e-mail service, are appropriate and may be the only means of effecting service of process when faced with an international e-business counterfeiting scheme. *See Chanel, Inc.*, 2010 WL 1740695, at *3 (e-mail service "reasonably calculated to notify Defendants of the pendency of this action and provide him with an opportunity to present objections."); *TracFone Wireless, Inc.*, 278 F.R.D. at 693 (finding that service of process by e-mail was reasonably calculated to apprise the defendants of the action and give it an opportunity to respond); *In re Int'l Telemedia Associates*, 245 B.R. at 722 (concluding e-mail and facsimile service to be appropriate and holding that a "defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party."); *Chanel, Inc. v. Zhibing,* Case No. 09-cv-02835, 2010 WL 1009981, at *4 (W.D. Tenn. March 17, 2010) (granting alternate service via e-mail, stating that e-mail service has the "greatest likelihood" of reaching e-commerce merchants, and noting "[t]he federal judiciary's own CM/ECF system alerts parties … by e-mail messages").

The foregoing authority demonstrates that allowing e-mail service in the present case is appropriate and comports with constitutional notions of due process, particularly given

Defendants' decisions to conduct their illegal businesses using the Internet and utilizing e-mail as a primary means of communication.

Additionally, service of a defendant by posting on a designated website has been deemed an appropriate means of service by posting. *See National Association for Stock Car Auto Racing*, 584 F. Supp. 2d at 826. A proposed method of website posting need only be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *National Association for Stock Car Auto Racing*, 584 F. Supp. 2d at 826 (citing *Mullane*, 339 U.S. 306, 315-16). In *National Association for Stock Car Auto Racing, Inc.*, the district court determined that the plaintiff could serve "Doe" defendants and apprise those defendants of a pending preliminary injunction hearing by posting on the plaintiff's website. *Id.* This Court has also consistently approved of this method of service in similar cases. *See, e.g., Richemont Int'l SA v. Cartierlove2u.com*, No. 19-cv-61968, 2019 WL 7938516 (S.D. Fla. Aug. 8, 2019) (Order authorizing alternate service of process via, inter alia, e-mail); *Adidas AG v. Adidas.style*, No. 17-cv-62535, 2018 WL 1801197 (S.D. Fla. Feb. 7, 2018) (same).

Accordingly, Plaintiff has created its serving notice website which will be appearing at, https://www.dropbox.com/scl/fo/yh98pnn1rib9z6ssktbrv/h?rlkey=qayqsb19pjifwhmh5bv3n3avr&dl=0, whereon copies of the Complaint, and all other pleadings, documents, and orders issued in this action will be posted. *See* Weaver Decl. at ¶ 6. The address to Plaintiff's Serving Notice Website will be provided to each Defendant via their e-mail accounts and will be included as part of service of process in this matter. *Id.* Posting the Summonses and Complaint on Plaintiff's Serving Notice Website will provide notice to Defendants sufficient to meet the due process requirements for service of process and notice pursuant to Fed. R. Civ. P. 4, apprise Defendants of

the pendency of this action, and afford Defendants and any other interested parties an opportunity to present their objections.

> **B.      Service of Process Via Electronic Means Are Not Prohibited by International Agreement.**

Service via e-mail and via posting on a designated website is not prohibited by international agreement.   Based upon the data provided in connection with Defendants' Internet based e-commerce stores, including the shipping information and payment data provided in connection with Defendants' Seller IDs, Plaintiff has good cause to suspect Defendants are all residing and/or operating outside of the United States and/or redistribute products from outside of the United States.  *See* Weaver Decl. at ¶ 17.

The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Service Convention") does not preclude a U.S. district court from authorizing service of process via e-mail or posting on a designated website. *Id.* at ¶ 18.  Each of the foreign jurisdictions identified with the Defendants' Seller ID's (*see* n. 2) is a signatory to the Hague Service Convention.   Thus, there are no international agreements prohibiting service by e-mail or posting on a designated website.  *Id.*

Alternative means of service, such as e-mail and website posting, are not prohibited by the Hague Service Convention where a signatory nation has not expressly objected to those means. *See Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, No. 15-cv-20590-FAM, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms of service set forth in the Hague Convention is limited to the forms of service expressly objected to); *see also Richemont Int'l SA v. Cartierlove2u.com*, No. 19-cv-61968-DIMITROULEAS, 2019 WL 7938516, at * 1 (S.D. Fla. Aug. 9, 2019) (authorizing e-mail service and by posting on Plaintiff designated website, noting an objection to the alternative means of service provided by the Hague Convention is

expressly limited to those means and does not represent an objection to other forms of service, such e-mail or website posting).

Article 10 to the Hague Service Convention allows service of process through means other than a signatory's Central Authority, such as "postal channels" and "judicial officers," provided the State of destination does not object to those means. *See* Hague Convention, Art. 10, 20 U.S.T. 361 (1969). Moreover, an objection to the alternative means of service provided in Article 10 does not represent a per se objection to other forms of service, such as e-mail or website posting. *See In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 434 & 437 (S.D.N.Y. 2009) (requiring express objection to alternative method of service by signatory nation to preclude that particular means of service). *See, e.g., Gurung*, 279 F.R.D. at 220 (approving service of process on foreign defendants via e-mail despite India's objection to Article 10, stating that an "objection to service through postal channels does not amount to an express rejection of service via electronic mail."); *Stat Med. Devices, Inc.*, 2015 WL 5320947, at *8-9 (permitting service of process on foreign defendants via e-mail despite Poland's objection to Article 10, noting "[t]his Court and many other federal courts have permitted service by electronic mail and determined that an objection to Article 10 of the Hague Convention . . . does not equate to an express objection to service via electronic mail."); *F.T.C. v. PCCare247 Inc.*, No. 12-cv-7189-PAE, 2013 WL 841037, at *4 (S.D.N.Y. March 7, 2013) (authorizing service of process via e-mail and Facebook, explaining that "[n]umerous courts have held that service by e-mail does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10"); *WhosHere, Inc.*, 2014 WL 670817 (authorizing service of process on foreign defendants via e-mail despite Turkey's objection to Article 10); *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-cv-02460-LHK, 2011 WL 2607158, at *2 (N.D. Cal. July 1, 2011) ("[N]umerous courts

have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. This is true even in cases involving countries that, like India, have objected to the alternative forms of service permitted under Article 10 of the Hague Convention.").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant the present motion and authorize service of the Complaint, Summons,[2] and all pleadings and discovery in this matter upon each Defendant in this action: (1) via e-mail by providing the address to Plaintiff's designated serving notice website to Defendants via the e-mail accounts provided by the e-commerce platform associated with each of the Seller IDs, and (2) via website posting by posting a copy Summons, Complaint, and all filings in this matter on Plaintiff's Serving Notice Website appearing at https://www.dropbox.com/scl/fo/yh98pnn1rib9z6ssktbrv/h?rlkey=qayqsb19pjifwhmh5bv3n3avr&dl=0.

Date:   July 17, 2023                    Respectfully submitted by,

                                         /s/ A. Robert Weaver
                                         Arthur Robert Weaver (Fla. Bar No. 92132)
                                         Email: rweaver@brickellip.com
                                         THE BRICKELL IP GROUP, PLLC
                                         1101 Brickell Avenue, South Tower, Suite 800
                                         Miami FL, 33131
                                         Telephone: (305) 728-8831
                                         *Attorneys for Plaintiff*

---

[2] The proposed TRO includes language providing authorization to serve Defendants electronically and provides for issuance of a single original summons in the name of "The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule 'A' to the Complaint" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b).   The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).