UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 23-61229-CIV-CANNON

**THE SMILEY COMPANY SPRL**,

    Plaintiff,
v.

**THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A**,

    Defendants.
_____/

### SEALED ORDER ON PLAINTIFF'S EX PARTE MOTIONS [ECF Nos. 6, 7]

**THIS CAUSE** comes before the Court upon Plaintiff's Ex Parte Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Motion for Injunctive Relief") [ECF No. 6] and Plaintiff's Ex Parte Motion to Authorize Alternative Service of Process (the "Motion for Alternative Service") [ECF No. 7] (together, the "Ex Parte Motions"). The Court has reviewed the Ex Parte Motions and the full record. For the reasons set forth below, the Motion for Injunctive Relief [ECF No. 6] is **GRANTED IN PART AND DENIED IN PART**; the Motion for Alternative Service [ECF No. 7] is **GRANTED**. **This Order shall be filed under seal.**

### FACTUAL BACKGROUND[1]

Plaintiff Smiley Company SPRL is the owner of eight different registered trademarks and fifteen different registered copyrights, all pertaining to Plaintiff's created symbol, the Smiley Logo (referred to herein as the "Smiley Marks" and "Copyright Works") [ECF No. 5 ¶¶ 10, 25, 32].

---

[1] These allegations are taken from Plaintiff's Amended Complaint and Schedule A [ECF Nos. 5, 5-1].

Plaintiff is a limited liability company with its principal place of business in Brussels, Belgium [ECF No. 5 ¶ 9]. In 1971, Franklin Loufrani designed the smiley symbol in order to symbolize "positive stories to readers, resulting in the creation of the . . . iconic yellow circle, two dots, and a smile (the 'Smiley Logo')" [ECF No. 5 ¶ 10]. Plaintiff uses the "Smiley Marks . . . in connection with the design, marketing, and distribution of various products" in brick-and-mortar stores and online [ECF No. 5 ¶ 26; ECF No. 6 pp. 5–6]. Plaintiff sells the following types of products: cosmetics and lotions; shoe polishes; cleaners; essential oils; toys; plastic balls; adhesive bandages; vitamins; computer accessories; jewelry; stationary; posters; stickers; calendars; office supplies; and various other household goods [ECF No. 6-2 pp. 1–6; *see* ECF No. 6-2 (providing exhaustive list of all trademarked products incorporating the Smiley Logo)]. Thus, Plaintiff has utilized the Smiley Marks in connection with design, marketing, and distribution of high-quality goods in interstate and foreign commerce, including commerce in the United States [ECF No. 5 ¶¶ 26–27].

Defendants are individuals or businesses who utilize the Smiley Marks to advertise and sell products online, without Plaintiff's permission to do so [ECF No. 5 ¶¶ 36–42]. Defendants engage in this conduct on e-commerce platforms using online Seller IDs associated with unknown underlying identities [ECF No. 5 ¶¶ 17–20; ECF No. 5-1 ("Schedule A")]. Plaintiff has compiled in Schedule A to the Complaint a list of 271 Defendants [ECF No. 5-1] and has documented examples of Defendants' alleged trademark infringement related to the Smiley Marks [ECF Nos. 5-2– 5-8].

On June 27, 2023, Plaintiff initiated this action [ECF No. 1], bringing five counts: Count I (Trademark Counterfeiting and Infringement Pursuant to Section 32 of the Lanham Act); Count II (False Designation of Origin Pursuant to Section 43(a) of the Lanham Act); Count III (Common Law Unfair Competition); Count IV (Common Law Trademark Infringement); and Count V (Infringement of Copyright) [ECF No. 1 ¶¶ 50–83]. The Court dismissed Plaintiff's initial

Complaint as a shotgun pleading and permitted Plaintiff to amend its complaint [ECF No. 4]. Plaintiff then timely filed an Amended Complaint, realleging the same five counts contained in the initial Complaint [ECF No. 5 ¶¶ 50–83]. On July 17, 2023, Plaintiff filed the instant Ex Parte Motion for Injunctive Relief, seeking the entry of a temporary restraining order that (1) enjoins further infringing conduct; (2) prevents Defendants from transferring ownership of, or data related to, the Seller IDs listed on Schedule A; and (3) imposes an asset freeze on Defendants' funds associated with their accounts [ECF No. 6 pp. 15–19]. On the same day, Plaintiff also filed the Motion for Alternative Service seeking authorization to effectuate service of process by e-mail and/or electronic publication [ECF No. 7]. The Ex Parte Motions [ECF Nos. 6, 7] are ripe for adjudication.

## LEGAL STANDARD

### I. Temporary Restraining Order

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). To obtain injunctive relief, a party must establish the following elements: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). None of the four requirements "has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *State of Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975) (citing *Siff v. State Democratic Exec. Comm.*, 500 F.2d 1307 (5th Cir. 1974)).

Injunctive relief "is an extraordinary and drastic remedy not to be granted unless the

movant 'clearly carries the burden of persuasion' as to the four prerequisites[,]" and "'[t]he burden of persuasion in all of the four requirements is at all times upon the plaintiff.'" *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)). "[A] district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)). Additionally, a court may issue a temporary restraining order without notice to the adverse party or its attorney only if (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1).

**II.     Electronic Service of Process**

Rule 4(f)(1) of the Federal Rules of Civil Procedure provides that individuals in foreign countries may be served by an internationally agreed means of service that is reasonably calculated to give notice. Fed. R. Civ. P. 4(f)(1). Rule 4(f)(2) lists acceptable alternative means of service if there is no internationally agreed means. *See* Fed. R. Civ. P. 4(f)(2). Additionally, Rule 4(f)(3) allows individuals in foreign countries to be served "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Rule 4(h) allows foreign entities to be served in any manner prescribed by Rule 4(f), except personal delivery under Rule 4(f)(2)(C)(i). Fed. R. Civ. P. 4(h). Thus, "district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service that are consistent with due process and are not prohibited by international agreements" with respect to foreign individuals and entities. *Brookshire Bros. v. Chiquita Brands*

*Int'l, Inc.*, No. 05-21962-CIV, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007). Accordingly, many courts have found electronic service of process to be appropriate in cases involving e-commerce and conduct over the internet. *See Chanel, Inc. v. Individual, P'ship, or Unincorporated Ass'n*, No. 17-62441-CIV, 2017 WL 8794733, at *5 (S.D. Fla. Dec. 13, 2017) (citing cases).

## DISCUSSION

Upon review of the record, the Court agrees that alternative service of process is justified. The Court also finds a temporary restraining order prohibiting further infringement of Plaintiff's Smiley Marks to be justified but not a restraint on the transfer of assets. The Court reasons as follows.

A.   **Electronic Service of Process**

Plaintiff has established that electronic service of process is a reasonable alternative means of service given the circumstances of this case. Defendants have used online profile names and unverified contact information in association with the conduct giving rise to this action [ECF No. 7 pp. 3–4; *see also* ECF No. 7-1 pp. 2–3]. And, because Defendants have used the relevant e-mail addresses and websites to engage in the alleged infringing activity, e-mail service is reasonably calculated to put them on notice and is not prohibited by the Hague Service Convention based on the record presented. *See Chanel, Inc. v. Zhixian*, No. 10-CV-60585, 2010 WL 1740695, at *2 (S.D. Fla. Apr. 29, 2010) (citing cases); Hague Service Convention, art. 1 ("[T]his Convention shall not apply where the address of the person to be served with the document is not known."); [ECF No. 6 p. 11 (stating that the Hague Service Convention "does not preclude a U.S. district court from authorizing service of process via e-mail or posting on a designated website")]. Accordingly, the Court exercises its broad discretion under Rule 4(f)(3) to permit electronic

service of process in this case, *see* Fed. R. Civ. P. 4(f)(3) and (h), for Defendants who reside in countries that are signatories to the Hague Convention as indicated below.[2]

**B.    Injunction on Further Infringement**

"[A] defendant is liable for infringement, if, without consent, he uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (quoting 15 U.S.C. § 1114(1)).  Therefore, in order to prevail, "a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion." *Id.*; *see also Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997).

Plaintiff has demonstrated a substantial likelihood of success on the merits for its trademark infringement claim.  *See* 15 U.S.C. § 1114.[3]

First, based on the record before the Court, Plaintiff has demonstrated that its mark has priority over Defendants' use of the Smiley symbol.  Plaintiff has used the Smiley Marks prior to Defendants selling their products, and Defendants do not have (and never have had) authority to use the Smiley marks [ECF No. 6 p. 8; ECF No. 6-1 pp. 4–5].  Additionally, Plaintiff's ownership and right to exclusively use the Smiley Marks are presumed through Plaintiff's trademark registrations.  *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir. 1980).

---

[2] Plaintiff does not specify the countries in which Defendants are believed to reside, offering instead a Declaration from counsel stating that "each foreign jurisdiction wherein the Defendants are suspected to reside are signatories to the Hague Convention" [ECF No. 7-1 p. 4].  Nothing in this Order should be construed as authorizing service on Defendants residing in non-Hague signatory countries.

[3] Because Plaintiff acknowledges that its common law claims track its Lanham Act claims [ECF No. 6 pp. 11–12], the Court focuses its analysis on the Lanham Act claims (Counts I and II).  Further, given the Court's finding that Plaintiff has established a likelihood of success on the merits of its Lanham Act claims, the Court need not address Plaintiff's copyright infringement claims for the purposes of this Order.

Second, Plaintiff has shown that the documented usage is likely to cause consumer confusion on a meaningful scale [ECF No. 6 pp. 8–11]. In assessing whether a defendant's mark is likely to cause confusion, courts "consider seven factors: (1) the type/strength of the plaintiff's mark; (2) the similarity of the parties' marks; (3) the similarity of the products and services the marks represent; (4) the similarity of the parties' retail outlets (trade channels) and customers; (5) the similarity of the parties' advertising media; (6) the defendant's intent; and (7) actual confusion." *Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 19-10771, 2021 WL 4438518, at *6 (11th Cir. Sept. 28, 2021) (citing *Frehling Enters., Inc.*, 192 F.3d at 1335).

The first factor—the type/strength of plaintiff's mark—cuts in favor of finding consumer confusion here. There are four established categories of marks: (1) fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic, "listed in descending order of strength." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1188 (11th Cir. 2011). Fanciful or arbitrary marks bear no logical relationship to the products they represent. *Id.* Suggestive marks refer to some characteristic of the products, but "require[] a leap of the imagination to get from the mark to the product." *Id.* (quoting *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007)). Descriptive marks also refer to some characteristic of the products but are not inherently distinctive and are afforded protection only if they achieve secondary meaning. *Knights Armament*, 654 F.3d at 1188; *see Welding Servs.*, 509 F.3d at 1358 (explaining that a mark acquires secondary meaning when it becomes associated with the product in the minds of the consuming public). And last, generic marks describe the class of the products and therefore are never distinctive and are afforded no trademark protection. *Id.*

In this case, the relevant mark is the "Smiley" symbol (the registered black and white smiley face) which, in the present context of selling clothing apparel and other memorabilia products, falls in the fanciful or arbitrary category because it "bears no logical relationship to the

7

product or service it is used to represent," which is clothing, apparel, and other personal and household goods. *Welding Servs., Inc.*, 509 F.3d at 1357. Therefore, Plaintiff is correct that, based on the evidence before the Court, the "Smiley Marks are undisputedly strong, arbitrary, and fanciful marks" [ECF No. 6 p. 9].

The remaining likelihood-of-confusion factors also support a conclusion at this stage that Defendants' infringing products are likely to cause consumer confusion. Turning first to the similarity of the parties' marks (factor two), the record shows that Defendants are using Plaintiff's exact Smiley Marks, or marks substantially similar to, Plaintiff's Smiley Marks [ECF No. 6 p. 9; ECF Nos. 5-2, 5-3, 5-4, 5-5, 5-6, 5-7, 5-8]. The record also shows, as to the similarity of the products the marks represent (factor three), the similarity of the parties' retail outlets and customers (factor four), and the similarity of the parties' advertising media (factor five), that Defendants are selling many of the exact same types of products that Plaintiff sells, including t-shirts, stickers, cosmetics and other stationary goods, and selling those items on e-commerce platforms like Plaintiff "in the same geographical distribution areas within the United States" [ECF No. 6 pp. 9–10; ECF No. 6-1 p. 4; *see also* ECF Nos. 5-2–5-8 (attaching voluminous exhibits containing screenshots of Defendants' online stores selling the same products with Smiley Marks that Plaintiff sells on the internet)]. Although Plaintiff's showing remains somewhat generalized in its reliance on the internet and e-commerce writ large—without identifying common websites, more particularized trade channels, or advertisement comparisons—the Court is sufficiently satisfied at this point that the average customer would not be able to distinguish Plaintiff's authentic products from Defendants' infringing products [ECF No. 6 p. 10]. This leaves the last two factors in the likelihood-of-confusion analysis (Defendants' intent and actual consumer confusion), which although not present in concrete form on this record do not disturb the overall balance of consumer confusion as gleaned from the prior factors [*see also* ECF Nos. 5-2, 5-3, 5-4, 5-5, 5-6, 5-7, 5-8].

Third, Plaintiff has adequately demonstrated that it will suffer irreparable injury absent an injunction prohibiting Defendants' infringing activity. In an affidavit attached to the Motion for Injunctive Relief, Nicolas Loufrani (employee and co-founder of Plaintiff), details the "significant monetary resources" Plaintiff invests in marketing its products online [ECF No. 6-1 p. 6]. These efforts by Plaintiff include implementing search engine optimization strategies and educating consumers on the history and reputation of Plaintiff's brand and high-quality products [ECF No. 6-1 p. 6]. Mr. Loufrani also states that Plaintiff's reputation will be harmed by Defendants' unauthorized use of the Smiley Marks on counterfeit and unauthorized products [ECF No. 6-1 p. 7; *see also* ECF No. 6 p. 13 (arguing that Defendants' infringing activity prohibits Plaintiff from "profit[ing] from its investment" and maintaining control over its merchandise)]. Although this showing could benefit from additional specificity, Plaintiff has provided enough information to demonstrate that it will suffer irreparable injury without an injunction on further infringement.

Fourth, with respect to the balance of harm to the parties from the requested injunction, the irreparable harm currently facing Plaintiff—damage to reputation and loss of "control over its content"—outweighs the burden that the requested temporary restraining order would impose upon Defendants, namely, the potential lost profits derived from continued, unauthorized use of the Smiley Marks [ECF No. 6 p. 14]. Further, the public holds an established interest in not being unnecessarily confused or misled in the marketplace. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008).

For these reasons, Plaintiff has met its burden to support the temporary restraining order insofar as it restrains Defendants from continuing to utilize the Smiley Marks without permission or transferring Seller IDs.

C.     **Restraint on Transfer of Assets**

The reasoning that justifies an injunction against the continuing infringement or transfer of Seller IDs, however, does not support a sweeping asset freeze as to all of the financial accounts associated with the approximately 271 Seller IDs listed as Defendants on Schedule A.  To permit a restraint on assets, a party must demonstrate a "likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted"; this requires a showing that dissipation is likely, not merely possible.  *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).  This standard can be satisfied "for example, by evidence that Defendants will become insolvent or that they have 'engaged in a pattern of secreting or dissipating assets to avoid judgment.'"  *Creative Power Sols. v. Energy Servs. Grp.*, No. CV-21-01559, 2021 WL 5396063, at *2 (D. Ariz. Nov. 18, 2021) (quoting *In re Estate of Ferdinand Marcos, Hum. Rts. Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994)).[4]  A request for injunctive relief, including an asset freeze, "invokes the district court's inherent equitable powers," *Levi Strauss & Co.*, 51 F.3d at 987, which are guided in the exercise of discretion according to the circumstances of a particular case, *see Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("'The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case.'" (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944))).

Plaintiff claims, in sweeping terms, that "Defendants" as a group are likely to transfer or secret their assets "beyond the jurisdiction of this Court," to preemptively frustrate any future collection efforts should Plaintiff obtain a favorable final judgment in this action [ECF No. 6

---

[4] *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 198 (3d Cir. 1990), *holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) (explaining that "[i]f a court imposes a preliminary injunction encumbering a defendant's assets in order to protect a potential future money judgment," then in order to properly tailor the scope of the injunction, "the court must make [an] attempt . . . to [reasonably] relate the value of the assets encumbered to the likely value of the expected judgment").

pp. 16–17, 19]. Plaintiff cites the inherently deceptive nature of Defendants' infringing conduct and the unspecified foreign locations of the numerous named Defendants, and then jumps to the generalized conclusion that Defendants are likely to move and/or dissipate their assets beyond the jurisdiction of this Court [ECF No. 6 pp. 2–3, 16–17]. Lacking from Plaintiff's Motion, however, is any attempt to differentiate among the very high number of Seller IDs (271) listed on Schedule A in terms of potential misconduct. Nor has Plaintiff offered any evidence to buttress the speculative assertion that all Defendants likely will transfer funds out of the associated financial accounts absent an injunction. Moreover, Plaintiff has offered no evidence of past misconduct by all, or even some, of the 271 Defendants as relates to likely dissipation; no evidence (or requests for evidence) linking assets in Defendants' accounts to the infringing activities (as distinct from assets unrelated to infringing activities); and no evidence that concealment of assets in this case is likely other than generalized claims about the deceptive nature of infringement and Defendants' foreign locations. This showing is insufficient to support an asset freeze. Plaintiff must offer more than conclusory statements and speculation to support the theory that Defendants in this case will likely conceal or dissipate assets. Indeed, as in any civil case, there is always the risk that a prevailing party may be unable to monetarily recover on a judgment, but "ordinarily, courts do not freeze defendants' assets whenever they are sued in order to make it easier for plaintiffs to collect on future judgments." *Creative Power Sols.*, 2021 WL 5396063, at *2.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Ex Parte Motion for Injunctive Relief [ECF No. 6] is **GRANTED IN PART AND DENIED IN PART**.

    a. Plaintiff's request for relief restraining Defendants from further infringement and transfer of use or control of Seller IDs is **GRANTED**.

CASE NO. 23-61229-CIV-CANNON

    b. Plaintiff's request for a restraint on transfer of assets is **DENIED**.

2. The Ex Parte Motion for Alternative Service of Process [ECF No. 7] is **GRANTED** in accordance with this Order.

3. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of Defendants having notice of this Order are temporarily restrained from:

    a. manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Smiley Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff;

    b. using any reproduction, counterfeit, copy, or colorable imitation of the Smiley Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants;

    c. secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Smiley Marks, or any confusingly similar trademarks, or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Smiley Marks, or any confusingly similar trademarks;

    d. using any reproduction, counterfeit, copy, or colorable imitation of the Copyrighted Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; and

    e. further infringing on the Smiley Marks and damaging Plaintiff's goodwill.

4. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Smiley Marks, Copyright Marks, or confusingly similar images, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller ID's.

5. Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

6. Upon receipt of notice of this Order, Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, Red Bubble, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall within five (5) business days after receipt of notice of this Order, provide Plaintiff with expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A" hereto, as well as any other accounts of the same customer(s); (ii) the identity and location of Defendants identified in Schedule "A," including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an identification of all products sold by Defendants using the Smiley Marks and/or Copyrighted Works; and (iv) an identification of all sales of such products and the revenues derived therefrom.

7. Any Defendant or Third-Party Provider subject to this Order may petition the Court to modify the injunctive relief set out in this Order.

8. The **Clerk** is directed to issue a single original summons in the name of "The Individuals, Partnerships and Unincorporated Associations Identified in Schedule 'A' of the Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

9. This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Smiley Marks and Copyrighted Works at issue in this action and/or unfairly competing with Plaintiff.

10. Pursuant to Rule 65(c) of the Federal Rule of Civil Procedure, the Court exercises its discretion not to require Plaintiff to post a bond.

11. Plaintiff shall serve copies of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs. **If Plaintiff learns that any Defendants reside in countries not a party to the Hague Convention on Service Abroad, Plaintiff shall immediately notify the Court and identify the proper means to serve any such Defendants. Nothing in this Order**

**shall be construed as authorization to serve Defendants via electronic service of process that reside in countries that are not signatories to the Hague Convention.**

12. In addition, the Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website, https://www.dropbox.com/scl/fo/yh98pnn1rib9z6ssktbrv/h?rlkey=qayqsb19pjifwhmh5bv3n3avr&dl=0 and shall provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.  The Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter Defendants by regularly updating the website located at https://www.dropbox.com/scl/fo/yh98pnn1rib9z6ssktbrv/h?rlkey=qayqsb19pjifwhmh5bv3n3avr&dl=0, or by other means reasonably calculated to give notice which is permitted by the Court.

13. The injunctive relief described in this Order shall remain in effect for **fourteen (14) days** following the entry of this Order.  **Any Motion to Extend this Temporary Restraining Order pursuant to Rule 65(b)(2) must be filed on or before August 14, 2023**.

14. The Clerk of Court shall file this Order **UNDER SEAL** until further order of the Court.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 3rd day of August 2023.

                                              **AILEEN M. CANNON**
                                              **UNITED STATES DISTRICT JUDGE**

cc:     counsel of record