UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 23-61229-CIV-CANNON

THE SMILEY COMPANY SPRL,

    Plaintiff,
v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** comes before the Court upon Plaintiff's Motion for Entry of a Preliminary Injunction (the "Motion") [ECF No. 6], filed on July 17, 2023. The Motion seeks the entry of a preliminary injunction enjoying the users of 134 vendor profiles from continuing to use Plaintiff's trademarks and copyrights and restraining all such users from transferring any assets out of the financial accounts associated with those profiles. The Court held a hearing on the Motion on August 23, 2023 [ECF No. 20]. The Court has reviewed the Motion and the full record. For the reasons set forth below, Plaintiff's Motion for Entry of a Preliminary Injunction [ECF No. 6] is **GRANTED IN PART AND DENIED IN PART**.

**FACTUAL BACKGROUND**[1]

Plaintiff Smiley Company SPRL is the owner of eight different registered trademarks and fifteen different registered copyrights, all pertaining to Plaintiff's created symbol, the Smiley Logo

---

[1] These allegations are taken from Plaintiff's Amended Complaint and Schedule A [ECF Nos. 5, 5-1].

(referred to herein as the "Smiley Marks" and "Copyrighted Works") [ECF No. 5 ¶¶ 10, 25, 32]. Plaintiff is a limited liability company with its principal place of business in Brussels, Belgium [ECF No. 5 ¶ 9]. In 1971, Franklin Loufrani designed the smiley symbol to symbolize "positive stories to readers, resulting in the creation of the . . . iconic yellow circle, two dots, and a smile (the 'Smiley Logo')" [ECF No. 5 ¶ 10]. Plaintiff uses the "Smiley Marks . . . in connection with the design, marketing, and distribution of various products" in brick-and-mortar stores and online [ECF No. 5 ¶ 26; ECF No. 6 pp. 5–6]. Plaintiff sells the following types of products: cosmetics and lotions; shoe polishes; cleaners; essential oils; toys; plastic balls; adhesive bandages; vitamins; computer accessories; jewelry; stationary; posters; stickers; calendars; office supplies; and various other household goods [ECF No. 6-2 pp. 1–6; *see* ECF No. 6-2 (providing exhaustive list of all trademarked products incorporating the Smiley Logo)]. Thus, Plaintiff has utilized the Smiley Marks in connection with design, marketing, and distribution of high-quality goods in interstate and foreign commerce, including commerce in the United States [ECF No. 5 ¶¶ 26–27].

Plaintiff has made a substantial showing that Defendants are individuals or businesses who utilize the Smiley Marks to advertise and sell products online, without Plaintiff's permission to do so [ECF No. 5 ¶¶ 36–42]. Following Plaintiff's Notice of Voluntary Dismissal Without Prejudice as to Defendants residing in countries that are not parties to the Hague Convention on Service Abroad [ECF No. 9], 134 Defendants remain in this action. As drawn from Plaintiff's allegations and supporting evidence, Defendants engage in online trademark infringement of the Smiley Marks on e-commerce platforms using online Seller IDs associated with unknown underlying identities [ECF No. 5 ¶¶ 17–20; ECF No. 5-1 ("Schedule A")]. Plaintiff has compiled in Schedule A to the Complaint a list of those 134 Defendants [ECF No. 17] and has documented examples of Defendants' alleged trademark infringement related to the Smiley Marks [ECF Nos. 5-2– 5-8].

On June 27, 2023, Plaintiff initiated this action [ECF No. 1], bringing five counts: Count I (Trademark Counterfeiting and Infringement Pursuant to Section 32 of the Lanham Act); Count II (False Designation of Origin Pursuant to Section 43(a) of the Lanham Act); Count III (Common Law Unfair Competition); Count IV (Common Law Trademark Infringement); and Count V (Infringement of Copyright) [ECF No. 1 ¶¶ 50–83]. The Court dismissed Plaintiff's initial Complaint as a shotgun pleading and permitted Plaintiff to amend its complaint [ECF No. 4]. Plaintiff then timely filed an Amended Complaint, realleging the same five counts contained in the initial Complaint [ECF No. 5 ¶¶ 50–83]. On July 17, 2023, Plaintiff filed an Ex Parte Motion for Entry of Temporary Restraining Order and Order Restraining Transfer of Assets (the "Motion for Injunctive Relief") [ECF No. 6], seeking the entry of a temporary restraining order that (1) enjoins further infringing conduct; (2) prevents Defendants from transferring ownership of, or data related to, the Seller IDs listed on Schedule A; and (3) imposes an asset freeze on Defendants' funds associated with their accounts [ECF No. 6 pp. 15–19]. On the same day, Plaintiff also filed the Motion for Alternative Service, seeking authorization to effectuate service of process by e-mail and/or electronic publication [ECF No. 7].

After reviewing those motions and the full record, the Court granted in part and denied in part the Motion for Injunctive Relief, granted the Motion for Alternative Service, and entered a 14-day temporary restraining order against Defendants on August 17, 2023 [ECF No. 8]. That temporary restraining order enjoined Defendants from engaging in continued infringement and transferring Seller IDs but did not impose asset transfer restrictions on the financial accounts associated with Defendants' infringing e-commerce profiles [ECF No. 8 pp. 11–15].

The Court then extended the temporary restraining order for an additional fourteen days upon Plaintiff's motion [ECF No. 10], through August 31, 2023 [ECF No. 13]. Plaintiff also

moved to schedule a Preliminary Injunction Hearing [ECF No. 10], which the Court granted and held on August 23, 2023 [ECF No. 13].  Plaintiff provided notice to all remaining Defendants of the motion and of the hearing and executed service on all remaining Defendants [ECF Nos. 18, 19 (certifying service of all remaining Defendants); ECF No. 13 p. 2 (ordering Plaintiff to notify Defendants of hearing); ECF No. 8 pp. 5–6, 11–12 (permitting electronic service of process); ECF No. 9 (moving to voluntarily dismiss all Defendants residing in countries not parties to the Hague Convention); ECF No. 12 (ordering the dismissal of all Defendants belonging to countries not parties to the Hague Convention); ECF No. 17 (notifying the Court of the remaining 134 Defendants)].

The instant motion for a preliminary injunction mirrors Plaintiff's motion for a temporary restraining order and does not offer additional material regarding the 134 remaining Defendants listed on Schedule A or the particular basis for Plaintiff's sweeping and generalized request for an asset freeze.  No Defendant has filed an opposition to the Motion.  The Motion is ripe for adjudication.

## LEGAL STANDARD

To obtain preliminary injunctive relief, a party must establish the following elements: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).  None of the four requirements "has a fixed quantitative value.  Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *State of Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)

(citing *Siff v. State Democratic Executive Committee*, 500 F.2d 1307 (5th Cir. 1974)).[2]

A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites[,]" and "'[t]he burden of persuasion in all of the four requirements is at all times upon the plaintiff.'" *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Authority v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)). "[A] district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan American Grain Company*, 805 F.2d 23, 26 (1st Cir. 1986)).

**DISCUSSION**

Upon review of the Motion and the full record, and for the same reasons stated in the Court's Order on Plaintiff's Motion for Entry of Temporary Restraining Order [ECF No. 8], the Court hereby enjoins Defendants from continuing to use Plaintiff's works and from transferring Seller IDs but denies Plaintiff's broad and conclusory request to freeze the assets of the now-134 vendor profiles listed as Defendants on Schedule A. The Court reasons as follows.

Plaintiff has demonstrated a substantial likelihood of success on the merits for its trademark infringement claim against each of the remaining vendor profiles listed on Schedule A.[3][4] Plaintiff

---

[2] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[3] *See* ECF No. 8 pp. 6–8 (detailing Plaintiff's evidence of trademark registration and of Defendants' improper use of the Smiley Marks).

[4] Because Plaintiff acknowledges that its common law claims track its Lanham Act claims (15 U.S.C. § 1114) [ECF No. 6 pp. 11–12], the Court focuses its analysis on the Lanham Act claims (Counts I and II). Further, given the Court's finding that Plaintiff has established a

has also established irreparable injury flowing from any continued infringement of the Smiley Marks.[5] With respect to the balance of harms, the irreparable injury facing Plaintiff outweighs the burden that a preliminary injunction would impose upon Defendants.[6] Further, the public holds an established interest in not being unnecessarily confused or misled in the marketplace.[7] Plaintiff therefore has met its burden to support the proposed preliminary injunction insofar as it restrains Defendants from continuing to utilize the Smiley Marks without permission and restricts Defendants from transferring Seller IDs.

The reasons that justify an injunction against any continuing infringing activity or transferring of Seller IDs still do not, however, support the proposed preliminary injunction to the extent it seeks a broad-based asset freeze as to the financial accounts of the approximately 134 vendor profiles listed as Defendants on Schedule A remaining in this case. For the same reasons detailed in the Court's Order granting in part and denying in part Plaintiff's Motion for Injunctive Relief, Plaintiff has not met its burden to warrant that aspect of the relief sought.[8]

---

likelihood of success on the merits of its Lanham Act claims, the Court need not address Plaintiff's copyright infringement claims for purposes of this Order.

[5] *See* ECF No. 6-1 pp. 6–7 (emphasizing that continued use of the Smiley Marks would reduce the return on investment of the "significant monetary resources" Plaintiff invests in marketing its products online and would harm Plaintiff's reputation).

[6] *See* ECF No. 6 p. 14 (explaining how Plaintiff's "loss of control over its content" outweighs any lost profits derived from continued, unauthorized use of the Smiley Marks).

[7] *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, F.3d 1200, 1209 (11th Cir. 2008).

[8] ECF No. 9 pp. 10–11 (explaining how Plaintiff's Motion fails to differentiate among the very high number of Defendants listed on Schedule A in terms of potential misconduct or provide any evidence to buttress the sweeping, speculative, and conclusory assertion that all Defendants will likely transfer funds out of the associated financial accounts absent an injunction).

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion for Preliminary Injunction and Order Restraining Transfer of Assets [ECF No. 6] is **GRANTED IN PART AND DENIED IN PART**.

   a. Plaintiff's request for relief restraining Defendants from further infringement and transfer of use or control of Seller IDs is **GRANTED**.

   b. Plaintiff's request for a restraint on transfer of assets is **DENIED**.

2. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of Defendants having notice of this Order are enjoined and restrained from:

   a. manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Smiley Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff;

   b. using any reproduction, counterfeit, copy, or colorable imitation of the Smiley Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants;

   c. secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Smiley Marks, or any confusingly similar trademarks, or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Smiley Marks, or any confusingly similar trademarks;

    d. using any reproduction, counterfeit, copy, or colorable imitation of the Copyrighted Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; and

    e. further infringing on the Smiley Marks and damaging Plaintiff's goodwill.

3. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Smiley Marks, Copyright Marks, or confusingly similar images, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

4. Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

5. This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Smiley Marks and Copyrighted Works at issue in this action and/or unfairly competing with Plaintiff.

6. Pursuant to Rule 65(c) of the Federal Rule of Civil Procedure, the Court exercises its discretion not to require Plaintiff to post a bond.

7. Plaintiff shall serve copies of this Order on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs.

CASE NO. 23-61229-CIV-CANNON

8. In addition, the Plaintiff shall post copies of this Order as well as all other documents filed in this action on the website, https://www.dropbox.com/scl/fo/yh98pnn1rib9z6ssktbrv/h?rlkey=qayqsb19pjifwhmh5bv3n3avr&dl=0 and shall provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. Plaintiff shall continue to updating the website located at https://www.dropbox.com/scl/fo/yh98pnn1rib9z6ssktbrv/h?rlkey=qayqsb19pjifwhmh5bv3n3avr&dl=0, with pertinent information relevant to this action.

9. This Order shall remain in effect during the pendency of this case and until further Order of the Court. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Preliminary Injunction upon notice to Plaintiff pursuant to the Federal Rules of Civil Procedure and Local Rules of the Southern District of Florida.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 31st day of August 2023.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record